UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

DC ENERGY, LLC,                                                Case No. 14-12923 tr7

     Debtor.

WAS, LLC,
PETROSOURCE, LP, and
EPM ENERGY, LLC,

     Plaintiffs,

v.                                                                          Adv. No. 15-1024 t

CLARKE COLL,

     Defendant.

## MEMORANDUM OPINION

Before the Court are the parties' cross motions for summary judgment. Plaintiffs ask the Court to impose a constructive trust in their favor on all funds in the Debtor's operating account. Defendant, contrariwise, seeks a declaratory judgment that the subject funds are estate property. After considering the summary judgment papers and the record, the Court concludes that imposing a constructive trust is not appropriate, and that the funds belong to the estate. Defendant therefore is entitled to summary judgment.

                                                        I.      FACTS

For the limited purpose of ruling on the summary judgment motion, the Court finds that there is no genuine dispute about the following facts:[1]

---

[1] In making these findings, the Court took judicial notice of the docket. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (a court may *sua sponte* take judicial notice of its docket).

1. Debtor is a New Mexico limited liability company.

2. Dan and Colleen Johnson formed Debtor and owned all membership interests until February 2013, when they sold 100% of their membership interests to Tomahawk Resources, LLC.

3. Debtor's business was[2] disposing of saltwater and other byproducts generated by oil production companies in the Permian Basin, together with recovering and selling "skim oil" extracted from the saltwater.

4. Debtor owned what it called a saltwater disposal system, which consisted of leased land,[3] disposal wells, well bores, easements, barrels, flow lines, and pipes (the "SDS").

5. Between about April 2010 and November 2012, Debtor sold interests in the SDS to third parties. The main buyers were Plaintiffs Eric McClusky, d/b/a/ EPM Energy, LLC ("EPM Energy"); Petrosource, LP ("Petrosource"); and Larry Borders and Mickey Welborn, d/b/a WAS, LLC ("WAS").

6. The purchase agreements between the Debtor and each buyer stated, inter alia:

The Sellers agree to sell and assign to Buyer an undivided [amount] percent ([]%) interest in the Saltwater Disposal System, the purchase shall be accomplished by Seller assigning the interests in the Saltwater Disposal System, as described to Buyer in the form of an assignment attached as "Exhibit A".

7. Each assignment, with minor variations, contains the following language:

Dan Johnson and Colleen Johnson, d/b/a DC Energy LLC … hereby transfer, grant, sell, assign and convey unto Assignee an undivided []% interest in the Saltwater Disposal System, the []% Income is to [sic] paid to Buyer and calculated each month on the Gross receipts…At anytime a well is added to the Saltwater Disposal System it will automatically become a part of this assignment/agreement.

8. The purchase agreements are reasonably well-drafted commercial contracts,

---

[2] Debtor is no longer operating.
[3] After February 2010, the primary lessor was the Willis Family Trust.

-2-

containing provisions about price; closing date and obligations; a warranty; conditions to closing; remedies for breach; governing law; recovery of attorney fees; and assignability. In exchange for the purchase price, Debtor assigned to the buyer a designated portion of the SDS.

9. The purchase agreements created a right to receive the designated amount of income generated by the SDS. Debtor was to remit to the buyer each month the agreed-upon percentage of SDS income. The purchase agreements do not require Debtor to segregate the buyer's SDS income from Debtor's. The agreements do not contain any language about fiduciary duty, bailment, trust, or the like.

10. The purchase agreements included the following:[4]

| Date | Buyer | Seller | % of SDS assigned |
|---|---|---|---|
| | | | |
| April 26, 2010 | EPM Energy | Debtor | 2.5% |
| July 29, 2010 | EPM Energy | Debtor | 3.0% |
| Dec. 12, 2011 | EPM Energy | John Leffler dba Lishler LLC | 2.5% |
| Dec. 20, 2011 | Petrosource | EPM Energy | 1.25% |
| March 1, 2012 | EPM Energy | Debtor | 5.0% |
| March 1, 2012 | Petrosource | Debtor | 5.0% |
| Nov. 29, 2012 | WAS | Debtor | 8.5% |
| Oct. 12, 2013 | EPM Energy | Alan Humphrey | 1.0% |
| Jan. 30, 2013 | Petrosource | EPM Energy | 0.5% |
| Oct. 23, 2013 | Petrosource | EPM Energy | 0.5% |
| Sept. 1, 2013 | Petrosource | Lillian Shetfield | 1.0% |

11. Plaintiffs ended up with the following percentages of the SDS and its income:

    a.    EPM:    14.5%
    b.    Petrosource:    9.0%
    c.    WAS:    8.5%

Total:    32%

---

[4] Defendant also mentions other agreements, but without enough information to add them to the table. In addition, because of the apparent re-assignment of the interests, it is difficult to tell the total percentage of interests held by Plaintiffs. In any event, the exact figure is not dispositive.

12. Debtor stopped paying Plaintiffs in September 2013.

13. Debtor filed its Chapter 11 case on September 30, 2014.

14. Pre-petition, Debtor failed to pay Plaintiffs $318,647 of SDS income, as follows:

      a. EPM: $144,387
      b. Petrosource: $89,619
      c. WAS: $84,641

15. Debtor had $31,861 in its bank account on the petition date.

16. Debtor transferred the funds into a debtor-in-possession operating account. During the Chapter 11 case, the balance was reduced to $13,482. That balance is traceable to amounts owed to Plaintiffs from pre-petition SDS income.

17. Post-petition, Debtor continued to operate the SDS and deposit all income into its operating account.

18. Debtors failed to pay Plaintiffs at least $57,685 due from post-petition SDS income, as follows:

      a. EPM: $26,139
      b. Petrosource: $16,224
      c. WAS: $15,323

19. The exact numbers are difficult to ascertain, as Debtor reported different amounts on its draft profit and loss statements, final profit and loss statements, and operating reports.

20. Debtor converted the case to Chapter 7 on August 11, 2015.

21. Debtor had about $80,000 in its operating account on the conversion date, of which at least $71,167 is traceable to Plaintiffs' portion of SDS income ($13,482 in prepetition and $57,685 in post-petition funds). Plaintiffs assert that a constructive trust should be imposed on the traceable funds.

22. Filed claims in this case exceed $2.5 million, including more than $530,000 of

general unsecured claims. Plaintiffs' claims are a little over half of the unsecured claims pool.

## II. DISCUSSION

### A. Summary Judgment Standards.

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Rule 56 applies in adversary proceedings. *See* Fed. R. Bankr. P. 7056. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and ... [must] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant carries this burden, Rule 56 requires the non-moving party to designate specific facts showing that there is a genuine issue for trial. *F.D.I.C. v. Lockhaven Estates, LLC*, 918 F. Supp. 2d 1209, 1231 (D.N.M. 2012) (citing *Celotex*). Further, the party opposing summary judgment must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990) (citing *Celotex*, 477 U.S. at 324).

To deny a motion for summary judgment, genuine fact issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A mere "scintilla" of evidence will not avoid summary judgment. *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir. 1993). Rather, there must be sufficient evidence on which the fact finder could reasonably find for the nonmoving party. *See Anderson*, 477 U.S. at 251; *Vitkus*, 11 F.3d at 1539.

B.   Constructive Trust Property is Not Part of the Bankruptcy Estate.

The commencement of a bankruptcy case creates an estate. 11 U.S.C. § 541(a). "The bankruptcy estate includes all legal and equitable interests of the debtor in property as of the commencement of the case." *Willess v. U.S.,* 560 Fed. Appx. 762, 764 (10th Cir. 2014) (citing 11 U.S.C. § 541(a)(1)). "Property subject to a trust is not [estate] property … because the debtor [has no] … equitable interest in property he holds in trust for another." *In re Lucas,* 300 B.R. 526, 533 (10th Cir. BAP 2003). Consequently, if the Court imposed a constructive trust on the money at issue, it would be removed from the bankruptcy estate and unavailable to Debtor's other creditors. *Id.*

C.   Constructive Trust Standards.

1.   State law. State law is the starting point for determining whether a constructive trust may and should be imposed. *In re Foster,* 275 F.3d 924, 926 (10th Cir. 2001) (courts must "look to state law to determine whether a party has met th[e] burden" of establishing constructive trust requirements); *In re C.W. Mining Co.,* 740 F.3d 548, 561 (10th Cir. 2014) (applying Utah constructive trust law); *In re Taylor,* 133 F.3d 1336, 1342 (10th Cir. 1998) (same). Under New Mexico law, a constructive trust is an equitable remedy used "to prevent the unjust enrichment that would result if the person having the property were permitted to retain it." *Tartaglia v. Hodges,* 10 P.3d 176, 189 (N.M. App. 2000) (quotations omitted). *See also Bassett v. Bassett,* 798 F.2d 160, 167 (N.M. 1990) ("A constructive trust arises where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it."). The entitlement to "a constructive trust must be proved by clear and convincing evidence." *Matter of Estate of McKim,* 807 P.2d 215, 217 (N.M. 1991).

-6-

There is no precise test in New Mexico to determine when a constructive trust should be imposed. *Aragon v. Rio Costilla Co-op. Livestock Ass'n,* 812 P.2d 1300, 1304 (N.M. 1991) ("The circumstances where a court might impose such a trust are varied.").[5] Constructive trust claimants must generally show some wrongdoing such as fraud, duress, undue influence, breach of a fiduciary duty, or abuse of confidence. *Gushwa v. Hunt,* 197 P.3d 1, 7 (N.M. 2008); *Tartaglia,* 10 P.3d at 189; *City of Rio Rancho v. Amrep Southwest, Inc.,* 260 P.3d 414, 428 (N.M. 2011); *Aragon,* 812 P.2d at 1304.

In addition to proving wrongdoing sufficient to invoke the equitable remedy of a constructive trust, the plaintiff must "be able to trace the wrongfully held property." *Foster,* 275 F.3d at 926-927. *See also In re Seneca Oil Co.,* 906 F.2d 1445, 1450-1451 (10th Cir. 1991) ("[T]o obtain a constructive trust over property of a bankrupt, a party must (1) show either sufficient wrongdoing by the bankrupt in acquiring the property or a fiduciary relationship between the party and the bankrupt, and (2) be able to trace the wrongfully-held property.").[6]

2. <u>Constructive trusts in bankruptcy</u>. The modern trend in the case law strongly disfavors bankruptcy courts imposing constructive trusts on assets that otherwise would be estate property. *See, e.g., In re WEB2B Payment Solutions, Inc.,* 815 F.3d 400, 407 (8th Cir. 2016) ("courts are reluctant to impost post-petition constructive trusts"); *In re Ades and Berg*

---

[5] *See also In re Taylor,* 133 F.3d at 1342 (any "attempt to define or describe a constructive trust would be inadequate because such definition or description would be too narrow in its scope and fail to include important types of constructive trusts."); *In re Piccerelli,* 525 B.R. 184, 191 (Bankr. D. Mass. 2015) ("it is difficult to define the exact scope of th[e] … constructive trust remedy because the diversity and variety of the different forms which come within its owner") (quotations omitted).

[6] The New Mexico Supreme Court has not addressed tracing, but almost certainly would require it. *See, e.g., Wilz v. Flournoy,* 228 S.W.3d 674 (Tex. 2007); *Hanigan v. Trumble*, 562 N.W.2d 526 (Neb. 1997); *Crestar Bank v. Williams*, 462 S.E.2d 333 (Va. 1995); *McFarland v. McFarland*, 470 N.W.2d 849 (S.D. 1991). Most New Mexico constructive trust cases involve a single, identifiable piece of property, but the Court did not find any cases holding that tracing is unnecessary.

-7-

*Group Investors*, 550 F.3d 240, 245 and 247 (2nd Cir. 2008) (courts should "act very cautiously" when applying constructive trust law in bankruptcy; "the equities of bankruptcy are not the equities of the common law"); *In re Dewey & Leboeuf LLP,* 493 B.R. 421, 432 (Bankr. S.D.N.Y. 2013) (constructive trusts are disfavored in bankruptcy); *In re International Management Associates, LLC,* 2016 WL 552491, *6 (Bankr. N.D. Ga.) (same); *In re Peregrine Financial Group, Inc.,* 2015 WL 2237201, *9 (Bankr. N.D. Ill.) (constructive trust remedy must be used sparingly so it does not "subvert bankruptcy's distribution scheme"); *In re Ross,* 478 B.R. 715, 731 (Bankr. W.D.N.C. 2012) (same); *In re IndyMac Bancorp, Inc.,* 2012 WL 1037481, *29 (Bankr. C.D. Cal.) (constructive trusts disfavored in bankruptcy); *Intelius Sales Co., LLC v. Idearc Inc.,* 2011 WL 2669087, *6 (Bankr. N.D. Tex.) (courts are generally reluctant to impose constructive trusts, and act very cautiously when doing so). This is because constructive trusts disrupt the Bankruptcy Code's distribution scheme and favor the trust claimant at the expense of other creditors. *Id; In re Foster,* 275 F.3d 924, 926 (10th Cir. 2001); *In re Omegas Group, Inc.,* 16 F.3d 1443, 1451 (6th Cir. 1994) (constructive trusts are "fundamentally at odds with the general goals of the Bankruptcy Code.").[7] To paraphrase a well-known Bible verse, it may be harder to get a constructive trust ruling from some bankruptcy courts than for a camel to pass through the eye of a needle.[8]

Because constructive trusts are disfavored in bankruptcy, creditors seeking constructive trusts must show a fraud that could not be remedied through a § 523 action; extreme injustice; or egregious conduct. *See, e.g., Amendola v. Bayer*, 907 F.2d 760, 763 (7th Cir. 1990) ("The grounds for imposing a constructive trust must be so clear, convincing, strong and unequivocal as to lead

---

[7] It could be argued that *Law v. Siegel*, 134 S. Ct. 1188 (2014) further discourages bankruptcy court use of the constructive trust remedy, since imposing a constructive trust subverts Congress' distribution scheme in the Bankruptcy Code. *See, e.g., In re Piccerelli*, 525 B.R. 184, 193 (Bankr. D. Mass. 2015). That issue is not currently before the Court.

[8] Matthew 19:24 (King James version).

-8-

Case 15-01024-t    Doc 50    Filed 08/05/16    Entered 08/05/16 14:46:36 Page 8 of 11

to but one conclusion"); *In re Builders Capital and Services, Inc.,* 317 B.R. 603, 612 (Bankr. W.D.N.Y. 2004) (constructive trust remedy is limited to "unique and egregious circumstances"); *In re Coffman,* 273 B.R. 137, 138 (Bankr. S.D. Ohio 2001) ("egregious and/or fraudulent behavior" required).[9]

        3.    <u>The facts of this case</u>. Plaintiffs' primary argument in favor of a constructive trust is that Debtor breached its fiduciary obligation to hold funds for Plaintiffs' benefit. Plaintiffs have cited no authority, and the Court has found none, that would warrant finding that a fiduciary duty was created, and/or imposing a constructive trust. Even if Plaintiffs held an actual royalty interest,[10] it would not automatically give rise to a fiduciary relationship. *See Continental Potash, Inc. v. Freeport-McMoran, Inc.,* 858 P.2d 66, 77 (N.M. 1993) (mining operators did not breach fiduciary duties by failing to remit funds to royalty holders pursuant to commercial leases); *Anderson Living Trust v. ConocoPhillips Co., LLC,* 952 F. Supp. 2d 979, 1044 (D.N.M. 2013) (fiduciary relationship does not automatically arise under commercial leases between oil producers and royalty holders). The same is true if the interest is characterized as an

---

[9] It should be noted that if a state court imposed a constructive trust prepetition, bankruptcy courts generally honor the remedy and exclude the trust funds from the bankruptcy estate. *See, e.g., In re Charlton,* 389 B.R. 97, 102 (Bankr. N.D. Cal. 2008) (constructive trust imposed pre-petition is fully effective); *In re Big Town Mechanical, LLC,* 2016 WL 3541162, *7 n. 6 (Bankr. D. Nev.) ("As a general proposition, only constructive trusts imposed prior to commencement of a debtor's bankruptcy are given effect"); *In re North American Coin & Currency, Ltd.,* 767 F.2d 1573, 1575 (9th Cir. 1985) ("we are not dealing with property that a state court has in the past placed under a constructive trust"); *In re Peregrine Financial Group, Inc.,* 487 B.R. 498, 514 (Bankr. N.D. Ill. 2013) (refusing to impose a constructive trust post-petition where state court had not done so prepetition); *In re Morris,* 260 F.3d 654, 666 (6th Cir. 2001) (implying that constructive trusts will only be recognized if imposed pre-petition); *In re Moore*, 608 F.3d 253, 263 (5th Cir. 2010) (the time for creditor to obtain constructive trust relief was pre-petition); *In re Garcia,* 484 B.R. 1, 17 (Bankr. D.P.R. 2012), *rev. on other grounds*, 507 B.R. 32 (1st Cir. BAP 2014) (many bankruptcy courts refuse to recognize constructive trusts unless imposed pre-petition); *In re Haddad,* 464 B.R. 501, 506 (Bankr. D. Mass. 2011) (same).

[10] Plaintiffs concede (correctly, in the Court's view) that they do not have an oil and gas royalty interest, presumably because no minerals were extracted from the ground.

-9-

entitlement to an income stream from Debtor's business. *See, e.g., In re Stotler and Co.,* 144 B.R. 385, 389 (N.D. Ill. 1992) (declining to find a fiduciary relationship or impose a constructive trust where defendants failed to remit a portion of its commissions to plaintiffs in violation of the parties' contract); *Performance Sales & Marketing, LLC v. Lowe's Companies, Inc.,* 2010 WL 2294323, *11 (W.D.N.C.) (contract entitling defendant to income stream from plaintiff's business did not give rise to a fiduciary obligation or constructive trust); *Ransom v. VFS, Inc.,* 918 F. Supp. 2d 888, 898 (D. Minn. 2013) (trucking company did not breach fiduciary duty by failing to remit a portion of revenue/income to drivers).

The relationship between Debtor and Plaintiffs stemmed from an arm's-length, commercial transaction. The purchase agreements and assignments contain no trust language or prohibition on co-mingling, nor do they otherwise obligate the Debtor to hold Plaintiffs' funds in trust. Debtor's breach of the agreements was not a breach of fiduciary duty under New Mexico law,[11] nor was it an "egregious injustice." The Court is also not persuaded by Plaintiffs' unjust enrichment argument. As the Tenth Circuit BAP noted, if an insolvent debtor's failure to fulfill a contractual obligation was the type of unjust enrichment that gives rise to a constructive trust, "the entire bankruptcy system would be unworkable." *In re PKR, P.C.,* 220 B.R. 114, 118 (10th Cir. BAP 1998).

### III.     CONCLUSION

Debtor unquestionably breached its contractual obligation pay Plaintiffs a portion of the SDS revenues. However, Plaintiffs failed to prove by clear and convincing evidence that they are entitled to the unusual equitable remedy of a constructive trust. Plaintiffs' motion for summary

---

[11] *See Alcantar v. Sanchez,* 257 P.3d 966, 975 (N.M. App. 2011) (declining to find a breach of fiduciary duty where "the parties merely established an arm's-length, commercial relationship").

-10-

judgment therefore must be denied, and Defendant is entitled to a declaratory judgment that all funds in Debtor's operating account are property of the estate. A separate order will be entered.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: August 5, 2016

Copies to:

Thomas D. Walker
500 Marquette Ave NW Ste. 650
Albuquerque, NM 87102

Christopher M. Gatton
10400 Academy Rd., Ste. 350
Albuquerque, NM 87111